**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARK LEWIS,** | |
| **PLAINTIFF,** | **Civil Action No. _____** |
| **v.** | |
| **ECOLAB, INC.,** | |
| **and** | **JURY TRIAL DEMANDED** |
| **ALEXANDER BARABOLKIN,** | |
| **DEFENDANTS.** | |

## COMPLAINT AND JURY DEMAND

Plaintiff Mark Lewis, by and through his attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1. This is an action for an award of damages and other relief on behalf of Plaintiff Mark Lewis (hereinafter "Plaintiff" or "Mr. Lewis"), a former employee of Ecolab, Inc. (hereinafter "Purolite" or "Defendant"). Despite his loyalty and consistent performance, Mr. Lewis was subjected to discrimination and harassment on the basis of his race and religion, and to retaliation for reporting and complaining about discrimination and harassment, culminating in his wrongful termination on June 3, 2024.

2. This action is filed pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

**JURISDICTIONAL STATEMENT**

3.      This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

4.      The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5.      This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6.      All conditions precedent to the institution of this suit have been fulfilled. On November 26, 2024, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On May 8, 2026, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.  With respect to the PHRA claims alleged herein, it has been more than one year since Mr. Lewis dual-filed his Charge as a Complaint with the PHRC.

**VENUE**

7.      This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8.      This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this jurisdiction and because Plaintiff was employed and terminated by Defendant in this jurisdiction.

**PARTIES**

9.      Plaintiff Mark Lewis is an adult male who is a citizen and resident of Philadelphia, Pennsylvania and the United States of America.

10.      Defendant Ecolab, Inc. is a global company that provides products related to water treatment, sanitation, and hygiene.

11.      Defendant Ecolab, Inc. has a corporate office located at 3700 Horizon Drive, King of Prussia, Pennsylvania 19406, where Plaintiff was employed.

12.      Defendant Alexander Barabolkin is, upon information and belief, an individual resident of Collegeville, Pennsylvania who supervised Plaintiff during his employment.

13.      At all relevant times, Defendant Purolite is and has been an employer employing more than 500 employees.

14.      At all relevant times, employees of Defendant Purolite acted as agents and servants for Defendant Purolite.

15.      At all relevant times, employees of Defendant Purolite were acting within the scope of their authority and in the course of their employment under the direct control of Defendant Purolite.

16.      At all times material hereto, Defendant Purolite acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant Purolite and in furtherance of Defendant Purolite's business.

17.      At all relevant times hereto, Plaintiff was an "employee" of Defendant Purolite within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

18.     At all relevant times hereto, Defendants each were an "employer" and/or "person" under the laws at issue in this matter and are accordingly subject to the provisions of said laws.

19.     This Honorable Court has personal jurisdiction over the Defendants.

**FACTS**

20.     On or about April 11, 2022, Mr. Lewis was hired by Ecolab, Inc. to work at Purolite, a start-up unit of Defendant Ecolab, Inc., as a Technician.

21.     Mr. Lewis, an African American, was one of the original starting employees of the start-up, along with approximately five (5) other individuals.

22.     While employed by Purolite, Mr. Lewis performed his duties in an excellent and hardworking manner.

23.     Despite his loyalty and consistent performance, Mr. Lewis was subjected to discrimination and harassment on the basis of his race and religion, and retaliated against for reporting the discrimination and harassment, culminating in his wrongful termination on June 3, 2024.

24.     Throughout his employment, Mr. Lewis reported to Defendant Alexander Barabolkin, a Caucasian individual of Russian descent.

25.     From, the beginning, Mr. Lewis was subjected to discrimination and harassment on the basis of his race.

26.     Mr. Barabolkin was very judgmental and overly scrutinized Mr. Lewis constantly, watching his every move and bullying him at every available opportunity.

27.     Mr. Barabolkin blatantly made efforts not to speak to the African American employees and created a competitive environment designed to pit employees against each other.

28.      Mr. Barabolkin further displayed his discriminatory animus by saying inappropriate things at the workplace.  For example, he said, "I'm not trying to be racist, but Black people buy things they can't afford."

29.      Purolite terminated minority employees – mostly African American employees – significantly more often than the Caucasian employees.

30.      In addition to the above, Purolite gave its Caucasian employees substantially more training than its African American employees, which, in turn, led to more promotions and opportunities for its Caucasian employees.

31.      This resulted in the African American employees being labeled as "poor performers," due solely to the necessary training purposefully withheld from them.

32.      After the initial training for all employees, Caucasian employees were given a considerable amount of additional training.

33.      Mr. Lewis, however, was only permitted to receive further training on rare occasions – far less than the Caucasian employees.

34.      Although Mr. Lewis had more tenure and seniority at Purolite, the company selectively chose certain Caucasian employees to receive additional training.

35.      This was particularly disconcerting when new and inexperienced Caucasian employees were immediately given numerous and advanced training sessions upon their hire, but Mr. Lewis and his African American peers who were employed at the company for far longer were not given that same training or the opportunity to receive those same types of training sessions.

36.      Thereafter, Mr. Lewis and the other African American coworkers were unfairly compared to the Caucasian employees, with praise for the "better performance" of the Caucasian

employees, without regard to the fact that Purolite itself created this situation by only providing certain types of training to the Caucasian employees.

37.     Thus, by refusing to provide all necessary training to Mr. Lewis, Purolite sought to make Mr. Lewis appear unqualified and a poor performer.

38.     With respect to one particular Caucasian employee, Mr. Barabolkin gave this employee substantial training immediately upon his hire, and did not provide that same training to Mr. Lewis.

39.     Purolite then promoted this individual over Mr. Lewis, despite the fact that Mr. Lewis had been employed at Purolite for considerably longer.

40.     Mr. Barabolkin made his animus towards African Americans clear by his treatment of African American employees.

41.     Of the original six Purolite employees, three of them were African American, including Mr. Lewis.  Those three employees were all terminated by Purolite.

42.     The three original employees who were not African American remain employed at Purolite, to Mr. Lewis' knowledge.  At least one of them has been promoted.

43.     A number of other African American employees at Purolite have also been terminated and treated differently than the non-African American employees.

44.     In or about early May 2024, Mr. Lewis complained directly to Mr. Barabolkin regarding the differential treatment he was experiencing, expressing his concerns that Purolite was engaging in bias and that he was being targeted.

45.     Mr. Barabolkin responded that any such differential treatment was due to Mr. Lewis' alleged "lack of production."

6

46.     Mr. Lewis noted that the other employees were being trained and he was not receiving the same training.

47.     Mr. Lewis was also subjected to other discriminatory and differential treatment.

48.     He was given a significantly lower raise than his peers, and did not received promotions despite being more qualified that several of his peers who did receive such promotions.

49.     Mr. Lewis has significant experience in the pharmaceutical industry, while his peers who received the promotions did not.

50.     Mr. Lewis was also discriminated against on the basis of his religion.

51.     Mr. Lewis is a member of the Black Hebrew religion and maintains a beard in accordance with his religion.

52.     In the beginning of his employment, Mr. Lewis sought and received an accommodation not to shave his beard due to his religious beliefs.

53.     A year later, however, the person who had approved Mr. Lewis' religious accommodation was no longer employed with the company, and the issue was brought up again.

54.     In or about the end of April 2024, Mr. Lewis was informed that if he did not shave his beard, he would be terminated.

55.     On June 3, 2024, Mr. Lewis was terminated.

56.     Several vague reasons were given for his termination, including an alleged "lack of performance."

57.     This was not a legitimate basis for Mr. Lewis' termination, as he was well-qualified and experienced for his position, and did everything he was asked to do.

58.    In light of the circumstances outlined above, and given his treatment during his employment with Purolite and the circumstances surrounding his termination, Mr. Lewis maintains that he was discriminated against and harassed on the basis of his race and religion, and that his termination was in retaliation for complaining of the discrimination and harassment.

59.    Based on the foregoing, Mr. Lewis was subjected to discrimination and harassment on the basis of his race and religion, and to retaliation, in violation of Title VII, Section 1981, and the PHRA.

60.    Mr. Lewis has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendants.

61.    Defendant Purolite and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Mr. Lewis severe emotional distress.

62.    Defendants willfully violated Title VII, Section 1981, and the PHRA, as Defendants knew that their actions violated the statutes and/or acted with reckless disregard as to whether its actions violated Title VII, Section 1981, and the PHRA.

63.    Mr. Lewis has suffered significant financial losses, which include, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendants.

**COUNT I**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.**
**(Plaintiff v. Defendant Purolite)**

64.    Plaintiff Mark Lewis repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

65. Based on the foregoing, Defendant Purolite engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq..

66. In discriminating against and harassing Mr. Lewis because of his race and religion, and in retaliating against Mr. Lewis for his complaints of discrimination and harassment, Defendant violated Title VII.

67. Defendant's violations were intentional and willful.

68. Defendant's willful violations warrant the imposition of punitive damages.

69. As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant Purolite, Plaintiff Mark Lewis has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### Civil Rights Act of 1866, 42 U.S.C. § 1981
### (Plaintiff v. All Defendants)

70. Plaintiff Mark Lewis repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

71. Based on the foregoing, Defendants engaged in unlawful employment practices in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981").

72. In discriminating against and harassing Mr. Lewis on the basis of his race, and in retaliating against Mr. Lewis for his complaints of discrimination and harassment, Defendants violated Section 1981.

73. Defendant Alexander Barabolkin aided and abetted the discrimination, harassment and retaliation by Purolite.

74. Defendants' violations were intentional and willful.

75. Defendants' violations warrant the imposition of punitive damages.

76. As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendants, Plaintiff Mark Lewis has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT III
### Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.
### (Plaintiff v. All Defendants)

77. Plaintiff Mark Lewis repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

78. Based on the foregoing, Defendants have engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

79. In discriminating against and harassing Mr. Lewis because of his race and religion, and in retaliating against Plaintiff, Defendant Purolite violated the Pennsylvania Human Relations Act.

80. Defendant Alexander Barabolkin aided and abetted the discrimination, harassment and retaliation by Purolite, and in so doing, violated the Pennsylvania Human Relations Act.

81. As the direct and proximate result of Defendants' violations of the Pennsylvania Human Relations Act, Plaintiff Mark Lewis has sustained loss of earnings, severe emotional and

psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

**PRAYER FOR RELIEF**

82. Plaintiff Mark Lewis repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Mark Lewis respectfully requests that this Court enter judgment in his favor and against Defendants Purolite and Barabolkin, and Order:

a. Appropriate equitable relief, including reinstatement or front pay;

b. Defendants to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination, harassment, and retaliation;

c. Defendants to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

d. Defendants to pay Plaintiff punitive damages;

e. Defendants to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendants to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

g. Plaintiff be granted any and all other remedies available under Title VII, Section 1981 and the PHRA; and

h. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Mark Lewis hereby demands trial by jury as to all issues so triable.


BELL & BELL LLP

By:    */s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA 19103
(215) 569-2285

*Attorneys for Plaintiff Mark Lewis*

Dated: August 5, 2026

12